■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM RODRIGUEZ, Appellant. — Judgment of the Supreme Court, New York County (McCooe, J.), rendered on April 16, 1981, convicting the defendant, after a jury trial, of assault in the first degree and sentencing him to a term of from 1½ to 4½ years' imprisonment, is reversed, on the law, in the exercise of discretion and in the interest of justice, and the matter remanded for a new trial. Prior to trial, the prosecutor moved to consolidate the defendant's indictment with that of Albert Camacho. The court, over defense objection, granted the motion. However, on the first day of trial, the attorneys for both the defendant and Camacho moved for a severance. According to defendant's counsel: "If Mr. Camacho should take the stand, he would implicate my client. And if Mr. Rodriguez, my client, takes the stand, he would implicate Mr. Camacho. If the court grants a Sandoval Motion with respect to Mr. Rodriguez, who has two prior cases which were dismissed, that would bar Mr. Frydrychowski [the prosecutor] from asking him about the underlying facts of the two previous arrests. Mr. Streit [Camacho's lawyer] would not be bound by that ruling, however, and the information, which I contend would be prejudicial, would come out. There is a similar problem with respect to Mr. Camacho and his right to testify. I think in a case like this, where each defendant is blaming each other and the defenses are adverse, the chances of a conviction are greater, and I think that the prejudice to each defendant far outweighs any efficiency or difficulty in the trying of the defendants jointly." The trial court, apparently considering itself bound by the consolidation order, denied severance. The defendant and Camacho, both of whom possessed a prior criminal history, brought *Sandoval* motions, which the court granted in their entirety. At trial, each of the codefendants took the stand and accused the other of being the sole assailant. The District Attorney, pursuant to the *Sandoval* rulings,

was not permitted to question the defendant as to his prior arrests (ultimately resulting in dismissals) for disorderly conduct and joyriding. Similarly, he was unable to inquire into Camacho's two juvenile arrests for robbery and his subsequent adjudication for juvenile delinquency, nor about his attempt to stab a teacher. However, the court correctly decided that it could not limit the right of either defense attorney to examine his client's codefendant regarding prior criminal or immoral acts. (See *People v Allen,* 67 AD2d 558, affd 50 NY2d 898, which held that a defendant is denied his constitutional right to cross-examine his accusers where he is precluded from questioning a nondefendant witness about prior acts of misconduct.) Although Camacho's attorney did not initially attempt to inquire into the defendant's earlier arrests, he requested that he be allowed to recall the defendant when the latter's counsel indicated his intention to cross-examine Camacho about his prior conduct. This placed the defendant's attorney in the unsupportable position of being able to exercise his client's constitutional right to cross-examine a witness against him only at the expense of having the jury hear prejudicial testimony concerning the defendant's previous criminal record. While it is generally within the sound judgment of the trial court to determine whether a severance is warranted, where a joint trial results in an impairment of the defendant's substantial rights, it amounts to an abuse of discretion to deny a motion to sever. (*People v La Belle,* 18 NY2d 405.) Thus, if one defendant's ability to exculpate himself has a significant potential of being unfairly prejudicial to the codefendant or, as occurred here, of each defense prejudicing the other, then a severance should be ordered, and the failure to do so constitutes error. (See *People v Carter,* 86 AD2d 451.) Concur — Sullivan, J. P., Ross, Carro, Asch and Milonas, JJ.